```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ERIC TAYLOR and GAIL TAYLOR,
individually and as beneficiaries, successors and
personal representatives of the estate of Ms.
Jazzlyn A. Taylor,

                    Plaintiffs,                16-cv-6121 (PKC) (SN)

      -against-                                MEMORANDUM
                                               AND ORDER

NEW YORK LIFE INSURANCE AND
ANNUITY CORP. and JOHN DOE(S),

                    Defendants.
-----------------------------------------------------------x
```

CASTEL, U.S.D.J.

       Defendant New York Life Insurance and Annuity Corp. ("New York Life") moves to dismiss the complaint of plaintiffs Eric Taylor and Gail Taylor pursuant to Rule 12(b)(6), Fed. R. Civ. P. (Docket # 18.) The plaintiffs, who are proceeding pro se, were granted multiple opportunities to either amend their complaint or file papers in opposition, but have declined to do so. The Court therefore reviews the motion unopposed.

       For the reasons explained, New York Life's motion to dismiss is granted.

BACKGROUND

       Plaintiffs Eric Taylor and Gail Taylor commenced this action on July 28, 2016. (Docket # 1.) The Complaint alleges that New York Life conspired to obtain certain assets and investments owed to plaintiffs in a legal settlement, which plaintiffs apparently entered into in or around 2002. (Docket # 1.) From the parties' submissions, it appears that the settlement related to serious injuries that plaintiffs' young daughter suffered in a swimming pool accident, which required continuous medical care and appear to have contributed to her death in 2015. The

Complaint alleges that plaintiffs are Indiana citizens and that New York Life is a citizen of Delaware and New York. (Compl't ¶¶ 12-13.)

On September 9, 2016, the Court referred this action to Magistrate Judge Sarah Netburn for general pretrial supervision. (Docket # 5.)

New York Life filed a motion to dismiss on January 20, 2017. (Docket # 18.) That same day, plaintiffs filed a motion seeking leave to file an amended complaint. (Docket # 21.) Magistrate Judge Netburn scheduled a telephone conference with the parties for January 30, 2017, but plaintiffs apparently did not participate. (Docket # 22, 23.) On February 1, 2017, Magistrate Judge Netburn issued an Order that granted plaintiffs leave to file an amended complaint no later than February 16, 2017. (Docket # 23.) That Order also terminated New York Life's Rule 12(b)(6) motion as moot in light of the anticipated amendment. (Id.)

In clear, understandable language, the Order of February 1 advised plaintiffs of their "absolute" obligations to comply with court orders and to monitor the docket of this case. (Id. at 1.) The Order advised plaintiffs to review New York Life's motion for the purpose of curing possible defects in the Complaint. (Id. at 2.) The Order also instructed plaintiffs to provide Magistrate Judge Netburn's chambers a phone number where they could be reached. (Id. at 2.)

Magistrate Judge Netburn thereafter granted plaintiffs four more extensions to file an amended complaint. Plaintiffs' extension requests included explanations of the serious medical problems confronting their family members, which Magistrate Judge Netburn considered and thoughtfully addressed.

On February 14, 2017, plaintiffs filed a motion for an extension of time to file an amended complaint. (Docket # 24.) They apologized for the motion's untimeliness, citing to

exigencies caused by a family medical crisis, a pending legal matter before the United States Court of Appeals for the Eleventh Circuit and a family funeral. (Id.) Magistrate Judge Netburn issued an Order that extended the time to file their amended complaint to March 6, 2017, and again instructed plaintiffs to provide a phone number where they could be reached. (Docket # 25.)

On February 28, 2017, plaintiffs filed a motion seeking an extension of time "to supplement the record." (Docket # 26.) The motion referred to a family funeral and attached a newspaper obituary. (Docket # 26.) In an Order of March 1, Magistrate Judge Netburn extended to March 10 the deadline for plaintiffs' amendment, and advised that "Plaintiffs should be focused exclusively on drafting and filing their amended complaint at this time." (Docket # 27.) The Order again instructed plaintiffs to submit a phone number. (Id.)

On March 13, 2017, after the March 1 deadline had passed, Magistrate Judge Netburn issued an Order that sua sponte extended plaintiffs' deadline to amend their complaint to April 3, 2017. (Docket # 28.) The Order noted plaintiffs' pro se status, and advised, "If plaintiffs fail to file their amended complaint by this time [e.g., April 3], they will be deemed to have waived their opportunity to do so, and the Court will reinstate the defendants' motion to dismiss . . . ." (Docket # 28.) As with prior Orders, it instructed plaintiffs to submit a phone number where they could be reached. (Id.)

On March 27, 2017, plaintiffs filed a motion seeking "an extension of time of thirty 30 days to seek legal counsel to represent plaintiffs in this pending case." (Docket # 29.) They cited to a family medical crisis and to pending legal actions in the Eleventh Circuit and state court. (Id.) Plaintiffs also mentioned advice given by a family minister to retain an

attorney, and gave details about their loved ones' struggles with cancer. (Id.) Magistrate Judge Netburn granted plaintiffs' request on March 29, stating:

> The Court is sensitive to the extraordinary struggles facing the plaintiffs, and their desire to not prejudice their case because of personal adversity. Accordingly, the Court GRANTS plaintiffs' motion for 30 additional days to seek an attorney. By Friday, May 5, 2017, even if they have been unable to secure representation, the plaintiffs shall file their amended complaint or an opposition to the defendants' motion to dismiss, which was filed on January 20, 2017. While the Court is willing to accommodate the pro se plaintiffs, it also has an obligation to manage this case to promote a just, speedy and efficient resolution of the claims. Accordingly, the Court will not grant plaintiffs additional time to prosecute their claims.

(Docket # 31.)

Plaintiffs have made no further submissions.

On May 17, 2017, Magistrate Judge Netburn issued an Order reinstating New York Life's motion to dismiss. (Docket # 33.) The Order acknowledged the "submissions indicating that the plaintiffs were suffering from extraordinary circumstances that required an extension." (Docket # 33.) The Order observed, however, that the Court also has an obligation to advance the action toward resolution, and that plaintiffs had filed neither an amended complaint nor papers in opposition to the motion to dismiss. (Id.) Magistrate Judge Netburn therefore vacated the February 1 order denying the motion to dismiss as moot, and reinstated New York Life's motion to dismiss. (Id.) The Order added: "In an abundance of leniency, the Court will permit plaintiffs until Friday, June 16, 2017, to file an opposition brief to defendant's motion. Should they oppose the motion, the defendants may file a reply brief by Friday, June 30, 2017. Otherwise, the motion shall be considered fully briefed." (Id. at 2.)

Plaintiffs have since made no submissions. This Court therefore considers the motion of New York Life to be unopposed and fully briefed.[1]

RULE 12(b)(6) STANDARD.

When considering a Rule 12(b)(6) motion, the Court draws all reasonable inferences in the plaintiff's favor and accepts as true the facts alleged in the complaint. In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Nevertheless, "'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Courts continue to afford special solicitude for pro se complaints after Iqbal and Twombly. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). A plaintiff's failure to respond to a motion to dismiss does not automatically warrant dismissal of the complaint. McCall v. Pataki, 232 F.3d 321, 323 (2d Cir. 2000).

DISCUSSION

According to the Complaint, New York Life and its co-conspirators undertook a scheme to defraud plaintiffs and their daughters of settlement funds and insurance proceeds.

---

[1] Plaintiffs' repeated failure to meet the deadlines set by Magistrate Judge Netburn may have warranted dismissal for failure to prosecute pursuant to Rule 41(b), Fed. R. Civ. P. However, instead, the Court decides the motion to dismiss on the merits.

(Compl't ¶ 16.) Plaintiffs allege that defendants "g[a]ve the appearance" of entering into a $5.3 million settlement, but that the actual, undisclosed settlement amount was $10.6 million. (Compl't ¶¶ 18, 23.) The Complaint alleges "a sophisticated conspiratorial scheme to embezzle money from plaintiffs through fraudulent investments" including stocks, mutual funds and annuities. (Compl't ¶ 2.) It alleges that John and Jane Doe defendants conspired with New York Life to acquire unauthorized investments on behalf of plaintiffs' severely injured child. (Compl't ¶ 3.) Plaintiffs also allege, pursuant to 42 U.S.C. § 1981, that defendants violated the protections of the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution. (Compl't ¶ 4.)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint should "give the adverse party fair notice of the claim[s] asserted so as to enable him to answer and prepare for trial." Salahuddin v. Cuomo, 861 F.2d 40, 442 (2d Cir. 1988). A complaint fails to give fair notice when it "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct . . . ." Atuahene v. City of Hartford, 10 Fed. Appx. 33, 34 (2d Cir. 2001)

The Complaint includes few factual allegations specific to the conduct of New York Life. It identifies New York Life's states of citizenship as Delaware and New York. (Compl't ¶ 3, 13.) It alleges that New York Life and its co-conspirators "devised in a wide-ranging scheme and artifice to defraud" plaintiffs and their daughters of settlement and insurance proceeds. (Compl't ¶ 16.) The body of the Complaint includes excerpts from several documents, including some indicating that New York Life issued an annuity to plaintiffs on

behalf of their daughter, to be paid in an amount of $5,533.58 per month beginning in October 2002. (Compl't at p. 11, 17, 20, 25.)

The plaintiffs' Complaint makes many references to legal concepts. Its fundamental flaw, however, is that it does not place New York Life on notice of what it is alleged to have done that is actionable. It consists mainly of a jumble of incomprehensible allegations, such as the following:

> The denial of access to and the whereabouts of the funds in question constitute a violation of plaintiffs' future rights that might or should come into existence under Indiana's rights of succession and inheritance rights or pursuant to an annuity contract.

(Compl't ¶ 7.)

> Although a defendant is able to defraud a plaintiff or their heirs of investment funds obtained through fraud from past acts, this does not entitle the defendant or their co-conspirators to the proceeds of fraud, (which is the rightful property of plaintiffs) in perpetuity. Once the Indiana's succession and inheritance rights are triggered, defendants or their co-conspirators must disclose and deliver all proceeds to their rightful heirs for distribution; whether by testamentary or intestate proceeding.

(Compl't ¶ 8.)

> The foregoing illustrations deconstruct the language and extrapolate the numbers in (Ex. 37) and its companion settlement sheet (Ex. 36), to conclusively prove that defendants and their co-conspirators surreptitiously incorporated dual $5.3 million dollar settlements into the alleged permission slip; while the settlement in question was exclusively plaintiffs' ERIC TAYLOR and GAIL TAYLORS' individually.

(Compl't ¶ 32.)

> The illustrations above provide an overall view of defendants and their co-conspirators schemes to defraud plaintiffs and embezzle millions of dollars in settlement proceeds. However, the illustrations are by no means an exhaustive demonstration of what can only be described as a Rubik's Cube of fraud. . . . The following illustration demonstrates how defendants and their co-conspirators

>strategically used Deluxe (3 part) Laser Business Checks, each check was sequentially imprinted with a dual set of check numbers on each settlement check as illustrated below . . . .

(Compl't ¶ 34.)

The Complaint incorporates ten pages of text from certain documents related to the 2003 settlement of a personal injury action in Indiana. The documents refer to several entities, including New York Life, and are followed by the statement:

> The illustrations above demonstrate how defendant and their co-conspirators as the architect strategically drafted the settlement contracts where each settlement would be virtually indistinguishable from its sister settlement using the $5.3 million template. However, where the settlements diverge is in the distribution of the settlement funds, e.g. the $5.3 million settlements illustrated in the Co-Gdns. petition (Ex. 27) specifically direct the settlement funds and annuity payments to be placed in a suitable trust fund.

(Compl't ¶ 24.)

Having reviewed the Complaint and the incorporated documents, the Court is unable to decipher the gist of an actionable claim.

The Complaint also asserts that plaintiffs' own lawyers in the personal injury action, Messrs. Hurst and Jacobs, were co-conspirators of the defendants in this action. (Compl't ¶¶ 28-32.) Copies of checks paid to their lawyers are annexed. The plaintiffs explain the basis for their dissatisfaction with their lawyers, but do not connect New York Life to their lawyers' conduct, except in a conclusory fashion.

The Court recognizes that the plaintiffs have experienced significant personal tragedies, including the accident that left their young daughter with severe injuries. However, the Complaint does not plausibly allege actionable conduct by New York Life as to the settlement of any claims. The allegations specific to New York Life's wrongdoing are legal conclusions and do not set forth the facts required to state a claim for relief. See Iqbal, 556 U.S.

at 678.  Because the Complaint does not set forth facts stating a claim for relief that is plausible on its face, plaintiffs' claims against New York Life are dismissed.  See id.

The Complaint is dismissed for additional reasons.  It appears that any purported misconduct by New York Life occurred in or around the fall of 2002.  (See, e.g., Compl't at p. 8, 10-12, 17 (describing New York Life's annuity payment dates beginning in October 2002).)  This action was commenced more than thirteen years later, in July 2016.  Whether plaintiffs' common-law claims are asserted under the laws of Indiana or New York, they are untimely.  See Ind. Code § 34-11-2-9 (six-year limitations period for contract actions); CPLR 213(2) (same); Ind. Code § 34-11-2-4(a) (two-year limitations period for negligence and intentional torts); CPLR 214 (three-year limitations period for negligence); CPLR 214(4) (three-year limitations period for injury to property); CPLR 213(8) (six-year limitations period for fraud).  The Complaint is therefore dismissed for the separate and independent reason that its claims are untimely.

Additionally, to the extent that the Complaint alleges under 42 U.S.C. § 1981 that New York Life deprived plaintiffs of certain Constitutional guarantees, there are no supporting allegations to show that New York Life acted under color of state law.  See, e.g., Dotson v. Griesa, 398 F.3d 156, 160 (2d Cir. 2005) (section 1981 applies "only" to persons acting under color of state law).

Lastly, plaintiffs' claims against the John Doe defendants are dismissed.  Under Rule 4(m) of the Federal Rules of Civil Procedure, defendants must be served with process within ninety days after a complaint is filed.  To date, no John Doe defendants have been served or identified.

CONCLUSION.

New York Life's motion to dismiss is GRANTED. (Docket # 18.) The Clerk is directed to terminate the motion, enter judgment for the defendants and close the case.

SO ORDERED.

*P. Kevin Castel*
P. Kevin Castel
United States District Judge

Dated: New York, New York
June 26, 2017